**SO ORDERED.**

**SIGNED this 26 day of June, 2009.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:                                )
                                      )
DOUGLAS EUGENE WAGNER,                )   Case No. 08-40806-7
                                      )
                    Debtor.           )
_____)

### MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT

This matter is before the Court on the Trustee's Motion to Approve Compromise and Settlement.[1] The Trustee is seeking Court approval of a settlement with GMAC Mortgage ("GMAC") that resulted from the Trustee's demand for repayment of a possible preference. The Debtor has objected to this proposed settlement on the basis that the funds associated with the preference action are exempt.

---

[1] Doc. 23.

This matter is a core proceeding[2] and the Court has jurisdiction to decide it.[3]

## I. FINDINGS OF FACT

The parties have entered into a stipulation of facts,[4] and the Court makes the following findings of fact based on those stipulations. Debtor filed a petition seeking relief under Chapter 7 on June 16, 2008. Debtor owns a homestead located in Emporia, Kansas, and GMAC holds the note and mortgage on that homestead. Debtor claimed as exempt both the homestead, pursuant to K.S.A. 60-2301, and a 401(k) retirement account, pursuant to K.S.A. 60-2313(a)(1).[5]

Prior to filing bankruptcy, Debtor became delinquent on mortgage payments due GMAC. As a result, in January 2008, GMAC filed a foreclosure action. Debtor and GMAC entered into a settlement agreement whereby Debtor agreed to pay $8,453.58 in exchange for GMAC reinstating the loan and dismissing the foreclosure action.

Debtor withdrew $8,453.58 from his retirement plan, received a check from Marshall & Ilsley Trust Company in that amount, and forwarded the trust company check to counsel for GMAC. Counsel refused to accept the check because it did not represent certified funds, and returned the check to Debtor. Debtor then deposited that trust company check into his personal bank account, and used the funds from that personal account to obtain a cashier's check, also in the amount of $8,453.58. He forwarded that certified check to GMAC's counsel, and as a result of receiving the payment, GMAC dismissed the foreclosure action.

---

[2] 28 U.S.C. § 157(b)(2)(F).

[3] 28 U.S.C. §§ 157 and 1334.

[4] Doc. 51.

[5] In Schedule C, Debtor indicates this asset is exempt under K.S.A. 60-2313(a)(1). In his brief in opposition to the Trustee's Motion to Approve Compromise and Settlement, however, he relies upon K.S.A. 60-2308.

2

Debtor's payment to GMAC was made within 90 days of the date he filed his bankruptcy petition. On both the date of the payment (transfer) to GMAC and the date of filing, Debtor's non-exempt assets were less than his liabilities.[6] On both the date of the transfer and the date of filing, GMAC was an undersecured creditor, with its claim against Debtor exceeding the value of its collateral.[7]

Within two months of the filing, the Trustee sent a demand letter to GMAC requesting turnover of $8,351.00 to the bankruptcy estate, arguing that the payment was an avoidable preference under 11 U.S.C. § 547.[8] In response, GMAC forthwith remitted the sum of $8,453.08 ($102 more than the demand) to the Trustee in full settlement of any claim the bankruptcy estate might have against it. Following receipt of these funds, the Trustee filed the current motion to approve compromise and settlement with GMAC. In other words, the Trustee seeks authority to release GMAC from any liability to the estate for the preference, and to retain the $8,453.03, instead of using estate funds to retain counsel to file suit against GMAC to seek a judgment for $8,351.00 and using estate funds for the filing fee.

Debtor objects to this proposed compromise and settlement, arguing only that the funds received by the Trustee are exempt on the basis that they were removed from Debtor's exempt

---

[6] Debtor argued, in his original objection to the compromise, that "he was not insolvent on the date of the alleged transfers." He now stipulates that he was insolvent.

[7] Debtor's original objection to the compromise was also based on his contention that "GMAC's mortgage covering said property was fully secured, and that the real estate covering said mortgage was worth a greater sum than the mortgage itself." Debtor now stipulates to the contrary—that GMAC was not, in fact, fully secured, likely because of the proposition that payments to an undersecured creditor are deemed to be applied to the unsecured portion of the debt and are therefore preferential. *In re Hawkins Mfg., Inc.*, 11 B.R. 512, 513-14 (Bankr. D. Colo. 1981).

[8] This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

3

retirement account, and used to pay a debt on an exempt asset, all of which transactions can be easily traced. Notably, Debtor never argues that the facts do not support the Trustee's claim that the payment (but for the exemption argument) was a preference.

Debtor's schedules indicate total unsecured debts in the amount of $20,205.47. As of the date of this order, the date for filing claims has expired, the amount of unsecured claims actually filed in Debtor's bankruptcy totals $13,170.73, and the Trustee is holding $10,365.58 in estate assets as of May 20, 2009. After Trustee and attorney fees, the Trustee projects at least a 65% dividend to unsecured creditors if the settlement is sustained.

**II. ANALYSIS**

The issue before the Court is whether, under Fed. Rule Bankr. P. 9019, the Court should approve the proposed settlement reached between the Trustee and GMAC on the Trustee's potential preference action.[9] The factors the Court must consider when deciding whether to approve a proposed settlement are (1) the probability of success on the merits; (2) any potential difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interest of creditors in deference to their reasonable views.[10] Generally, compromises are favored in bankruptcy.

Applying these factors to the stipulated facts strongly militates in favor of approving the settlement. With nothing more than the use of a demand letter, the Trustee was able to receive from GMAC an even larger sum than he had demanded. No one is arguing that the settlement is not in the best interest of the estate, but rather the Debtor objects solely on the basis that the money funding

---

[9]*In re Southern Medical Arts Companies, Inc.*, 343 B.R. 250, 255 (10th Cir. BAP 2006).

[10]*Id.* at 256.

4

this settlement is his exempt property.[11] He essentially argues that the Court should order the Trustee to abandon his preference claim against GMAC and return the money to him.[12]

Debtor claims that the funds withdrawn from his exempt retirement account, deposited into his bank account, and then paid to GMAC to cure the arrearage on his mortgage, are exempt. In support of this position, Debtor relies upon the Kansas Supreme Court case of *Decker & Mattison Co., Inc. v. Wilson*,[13] and the general principle of law from other states that exempt funds that are placed in a bank account do not lose their exempt status so long as the funds can reasonably be traced.

In *Decker*, the defendant received over $77,000 from a workers compensation settlement. He deposited the majority of those funds into a savings account with his wife. Approximately two months later, and before any additional funds had been deposited into that account, the defendant withdrew $5,000 from the account and used those funds to purchase a certificate of deposit ("CD"). At issue was whether the funds contained in the CD retained their exempt status as proceeds from the workers compensation settlement.

In ruling on the exemption issue, the Kansas Supreme Court relied heavily on the express language of the pertinent workers compensation exemption statute, K.S.A. 44-514, which states that "no claim for compensation, or compensation agreed upon, awarded, adjudged, or paid, shall be

---

[11]Debtor no longer argues that the Trustee would be unable to prove a preference claim. Debtor has stipulated that GMAC was an undersecured creditor at both the time of the transfer and at the date of filing, that the transfer was of an interest of the Debtor in property to or for the benefit of a creditor for or on account of an antecedent debt, and that it was made while Debtor was insolvent within 90 days of filing bankruptcy.

[12]The Trustee's brief questioned "what benefit the Debtor will gain if the Motion is not approved." The benefit to Debtor is that he would have possession of the $8,453.58, rather than having that money distributed to creditors whose debts have now been discharged, or the money would be returned to GMAC, which would use the money to reduce the debt owed against his homestead.

[13]273 Kan. 402 (2002).

5

assignable or subject to levy, execution, attachment, garnishment, or any other remedy or procedure for the recovery or collection of a debt . . . ."[14] The Kansas Supreme Court, relying heavily on the inclusion of the word "paid" in the relevant statute, held that "the Kansas statute clearly contemplates continued protection of the exemption until after the compensation has reached the hands of the employee."[15] This led to the ultimate holding that "[b]ecause K.S.A. 44-514 exempts funds paid, it is consistent with the legislative intent to extend such exemption until after the funds have been deposited in a bank account."[16]

This case is distinguishable from *Decker*, however, because the funds here were originally exempt because they were held in a retirement account, not because they were proceeds from a workers compensation claim. Exemptions for retirement accounts in Kansas are governed by K.S.A. 60-2308, which provides that "any money or other assets <u>payable</u> to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan . . . shall be exempt from any and all claims of creditors of the beneficiary or participant."[17] Unlike the Kansas statute exempting workers compensation benefits, the statute exempting retirement plans does not protect money "paid" to a beneficiary, but rather only those funds "payable" to that beneficiary. This difference in the statutory language between K.S.A. 44-514 and K.S.A. 60-2308 is fatal to Debtor's argument, especially in light of the following Tenth Circuit Bankruptcy Appellate decision.

---

[14] K.S.A. 44-515(a) (emphasis added)

[15] *Decker*, 273 Kan. at 406.

[16] *Id*. at 407.

[17] K.S.A. 60-2308(b) (emphasis added).

6

The Bankruptcy Appellate Panel for the Tenth Circuit discussed the use of the term "payable," and the impact it has on funds once they are removed from a retirement account, in *In re Carbaugh*.[18] In *Carbaugh*, the debtor received, upon his retirement, nearly $100,000 in a lump sum payment from a retirement plan. Those funds were placed in a bank account, and no other funds were co-mingled with them. Approximately two years after his retirement, the debtor filed for bankruptcy and claimed, *inter alia*, that the funds in the bank account were exempt under K.S.A. 60-2308. The debtor claimed, just as Debtor does here, that K.S.A. 60-2308 exempts not only money that is still in a retirement account and that is ultimately payable to a beneficiary, but also money that has actually been paid from such an account.[19]

The BAP rejected this contention, noting that such an interpretation of the word "payable" "is contrary to the interpretation given to that word in Kansas courts."[20] "In Kansas the term 'payable' refers to funds that will be paid in the future, <u>but it does not refer to funds already paid</u>."[21] The BAP denied the debtor's exemption claim on that basis.

Based upon the clear statutory language of K.S.A. 60-2308 coupled with the BAP's holding in *Carbaugh*, this Court finds that the funds in question are not exempt. The fact that Debtor can clearly trace the funds in question from his retirement account, into his bank account, and then to the payment made on his exempt homestead, is irrelevant. Kansas law clearly provides that funds held

---

[18]278 B.R. 512 (10th Cir. BAP 2002).

[19] *Id*. at 523. *Cf. Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1081 (10th Cir. 1994) (holding "ERISA . . .was not intended to apply to benefits following distribution to and receipt by the beneficiary").

[20]*In re Carbaugh,* 278 B.R. at 523.

[21]*Id*. (citing *In re Moore*, 214 B.R. 628, 631 (Bankr. D. Kan. 1997)) (emphasis added). *See also State ex rel. Smith v. Shawnee County Comm'rs.*, 132 Kan. 233, 294 (1931) (holding that "[t]o give the word 'payable' any other or different meaning from the general equivalent of 'due,' or 'to be paid,' or 'capable of being paid,' would be giving it an unusual and strained construction.").

7

in a retirement account remain exempt so long as those funds remain "payable" to an individual. However, unlike workers compensation benefits, Kansas law does not provide protection from garnishment or levy on those funds once they are "paid" out to the intended beneficiary. Under the facts of this case, the funds Debtor received from his retirement account, and used to pay GMAC, lost their exempt status after they were paid over to Debtor.

**III.    CONCLUSION**

Based upon the Court's finding that the funds in question lost their exempt status upon being paid to Debtor, the Court finds Debtor's objection to the Trustee's motion for compromise and settlement is without merit. The Court finds there is no basis for refusing to approve the settlement reached by the Trustee, especially given the fact that the proposed settlement is in excess of the amount the Trustee believed the estate was entitled to receive as a result of this preferential transfer, and that the Trustee was able to secure this settlement by doing nothing more than sending a demand letter to GMAC. Settlement is clearly in the estate's best interest because a comparison of the funds held by the Trustee with the claims on file reveals that unsecured creditors stand to receive a substantial dividend in this case if the settlement is approved. It would make no sense to disapprove the settlement, require the Trustee to file suit against GMAC , and obtain and collect a judgment, when GMAC has, effectively, agreed that it has no defense to the preference action.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Motion to Approve Compromise and Settlement is granted.

**IT IS FURTHER ORDERED** that the Trustee is authorized to settle the potential preference action against GMAC Mortgage for the amount of $8,453.08. The $8,453.08 collected

8

by the Trustee will become property of the estate, subject to distribution pursuant to the Bankruptcy Code.

###

9